IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Cr. No.: 23-00748-KWR |
| vs. | ) | |
| **SOLOMON PEÑA**, | ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT SOLOMON PEÑA'S MOTION TO SEVER**

Defendant Solomon Peña moves to sever Counts 11-13, arguing both misjoinder under Fed. R. Crim. P. 8(a) and prejudice under Fed. R. Crim. P. 14. Both arguments fail.

First, with regard to joinder of the offenses under Rule 8(a), the conduct underlying Counts 11-13 arises from Defendant's attempt to eliminate key witnesses to the conduct underlying Counts 1-10. The Tenth Circuit has found charges addressing conduct that seeks to obstruct the prosecution of other counts in an indictment are properly joined under Rule 8(a).

Second, Defendant also fails to justify severance under Rule 14. Defendant's conclusory statements about the risks of prejudice do not warrant severance. Even if severance is granted, Individual 1 and Individual 2 will testify about Defendant's admissions related to Counts 1-10. And their testimony about his Defendant's attempts to kill Witness 1 and Witness 2 is probative of Defendant's guilty conscience related to Counts 1-10, and therefore admissible under Fed. R. Evid. 404(b). Defendant cannot meet his burden of demonstrating why a need for severance would outweigh the expense and inconvenience of two trials.

For these reasons and those discussed herein, Defendant's motion should be denied.

I.  BACKGROUND

A grand jury superseded its indictment of Defendant on March 26, 2024, adding Counts 11-13. The additional counts charge Defendant with Solicitation to Commit a Crime of Violence, in violation of 18 U.S.C. § 373. These additional counts stem from two incidents where Defendant offered to pay persons that he met in pre-trial confinement (Individual 1 and Individual 2) to arrange the murders of co-conspirators expected to offer key testimony against him at trial (Witness 1 and Witness 2). As explained below, in his conversations with Individual 1 and Individual 2, Defendant not only solicited the killings, but he also made key admissions related to the crimes charged in Counts 1-10. The United States intends to elicit both his admissions regarding Counts 1-10 and his solicitations forming the basis for Counts 11-13 at trial.

A. The Basis for Count 11

On May 24, 2023, the same day that the grand jury returned the initial indictment against Defendant, it also separately indicted Individual 1 for drug trafficking and firearms charges. Shortly thereafter, Individual 1 and Defendant met at the Cibola County Correction Center, where the two were being held in pre-trial confinement. Defendant began discussing details of his case with Individual 1, including make admissions and statements that comport with those revealed by the United States' investigation. When a local politician announced that he would no longer seek elected office around June of 2023, Defendant essentially took credit and told Individual 1 that the resignation signaled that politicians now knew that they would be held accountable, and that "we" are willing to shoot at them. In making these statements, Defendant made admissions indicating his role in the shootings forming the basis for Counts 1-10.

Eventually, Defendant's conversations with Individual 1 turned to killing Witness 1, a co-conspirator who will testify against Defendant at trial. Specifically, Defendant offered Individual

1 a $10,000 payment and use of his Nissan Maxima in exchange for Individual 1 killing Witness 1, and stated his belief that the United States had an otherwise weak case against him. This solicitation forms the basis for Count 11 of the Superseding Indictment. The United States intends to elicit from Individual 1 not only testimony related to this solicitation, but also Defendant's admissions related to Counts 1-10.

### B. The Basis for Counts 12 and 13

Several months after soliciting Individual 1 to kill Witness 1, Defendant solicited another fellow inmate, Individual 2, to kill both Witness 1 and a second co-conspirator who will testify against him at trial, Witness 2. This occurred after Defendant had been moved to the Torrance County Detention Center. As with his discussions with Individual 1, Defendant admitted key details about his case to Individual 2, including that he paid a father and son to conduct shootings against politicians and county commissioners he deemed to have wronged him. He further admitted to having a list of additional political targets beyond those he targeted in the four alleged shootings. At one point, Defendant told Individual 2 that the United States would not have evidence of his location during the shootings because he left his phone at home. As he did with Individual 1, Defendant told Individual 2 that the United States had a weak case.

But Defendant's actions again indicated that he was worried about the witnesses who would testify against him for the United States. Individual 2 will testify that Defendant offered him $10,000 to arrange the killings of both Witness 1 and Witness 2. Defendant's solicitations to kill Witness 1 and Witness 2 form the basis of Counts 12 and 13, respectively. As with Individual 1, the United States intends to elicit testimony from Individual 2 about both the solicitations and Defendant's admissions related to Counts 1-10.

## II. ARGUMENT

### A. The Court should deny Defendant's Motion to Sever because Counts 11-13 are properly joined under Fed. R. Crim. P. 8(a)

Under Fed. R. Crim. P. 8(a), joinder of offenses is permitted if the offenses "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." The Tenth Circuit "construe[s] Rule 8(a) broadly to allow liberal joinder to enhance the efficiency of the judicial system." *United States v. Johnson*, 130 F.3d 1420, 1427 (10th Cir. 1997). "[The Tenth Circuit] do[es] so in part because the Supreme Court 'has long recognized that joint trials 'conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial.'" *United States v. Jones*, 530 F.3d 1292 (10th Cir. 2008) (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).

Courts, including the Tenth Circuit, have specifically approved of joinder where a defendant attempted to eliminate or obstruct the government's presentation of evidence of the underlying charges, including through witness tampering. *See, e.g.*, *United States v. Vancleaf*, 1999 U.S. App. LEXIS 14674, at *13 (10th Cir. 1999) (unpublished) (approving joinder of charges alleging witness tampering and travel in interstate commerce to engage in prostitution where the witness tampering charge "stemmed from" the other charges); *United States v. Foreman*, 87 F. App'x 107, 109 (10th Cir. 2004) (unpublished) (affirming joinder of charges relating to witness tampering, retaliation, and obstruction of justice with conspiracy, carjacking, bank robbery, and firearms charges); *United States v. Walker*, 104 F.3d 368, 1996 WL 731631, at *4-5 (10th Cir. 1996) (unpublished).

In *Walker*, for example, a superseding indictment added three additional counts addressing the defendant's attempt to murder a witness expected to testify against him. 1996 WL 731631, at

*4-5. The Tenth Circuit described the attempts to eliminate the witness as "connected transactions," and held that because the defendant "planned a violent crime to eliminate evidence relating to Count I," it provided "a sufficient nexus to permit joinder under Fed. R. Crim. P. 8(a)." *Id.* At *5. And in *Foreman*, the Tenth Circuit approved joinder of obstruction charges, including 18 U.S.C. § 1512 counts for tampering with a witness, "because both set of charges arose from Defendant's pursuit of a common unlawful activity." 87 F. App'x at 109. The Court stated that the "[d]efendant's attempts to influence the outcome of the robbery charges subsequent to the robbery 'were an integral part of his continuing efforts to ensure nondisclosure and retain the benefits of his [unlawful scheme].'" *Id.* (quoting *United States v. Fagan*, 821 F.2d 1002, 1007 (8th Cir. 1987) (upholding district court's refusal to sever mail fraud counts from witness intimidation counts)).

Peña's solicitations of Individual 1 and Individual 2 to kill witnesses expected to testify against him are similarly "connected," and similarly show an attempt to conceal and "ensure nondisclosure" of his acts of violence against Victims 1, 2, 3, and 4 for engaging in federally protected activity. The conduct underlying Counts 1-10 was the impetus for the conduct underlying Counts 11-13. And although Counts 11-13 do not allege violations of 18 U.S.C. § 1512, they do allege solicitations to violate 18 U.S.C. § 1512, which the Tenth Circuit specifically considered and found to be properly joined to the underlying substantive offenses. *See Foreman*, 87 F. App'x at 109. Other circuits have done the same. *See United States v. Rock*, 282 F.3d 548, 552 (8th Cir. 2002) (finding 18 U.S.C. § 1512(b)(1) count was properly joined because "witness tampering and felon-in-possession offenses . . . were factually interrelated); *United States v. Fagan*, 821 F.2d 1002, 1007 (5th Cir. 1987) (finding 18 U.S.C. § 1512(a) witness intimidation charge was properly joined with mail fraud counts because "threat and intimidation were related

5

to the fraudulent scheme."). This generally harmonizes with decisions rejecting severance when conduct forming the basis for one count involves concealment of conduct forming the basis for another. *See, e.g., United States v. Strand*, 617 F.2d 571, 575 (10th Cir. 1980) (holding that "[t]he interrelationship of the evidence, vis-a-vis the charges of submitting a false tax return and fraud in the sale of securities, was extremely clear, and, for the most part, inseparable"); *United States v. Lee*, 919 F.3d 340, 358-359 (6th Cir. 2019) (finding sufficient evidence of obstruction of justice offenses where the defendant falsely told an FBI agent that she disclosed all her campaign contributions and lied about actions she took relating to a family member's court case); *United States v. Rosen*, 716 F.3d 691, 702 (2d Cir. 2013) (finding that failure to disclose consulting agreements evidenced either concealment of a corrupt relationship or consciousness of guilty).

Moreover, the Tenth Circuit has approved joinder where it was far less obvious that the charged misconduct arose from the same unlawful activity than it is here. In *United States v. Johnson*, the Tenth Circuit found that "there was no evidence that Johnson actually used or carried the handgun when he sold cocaine to Watkins on the night of October 18, 1995," but nonetheless held that "[i]t was reasonable for the jury to infer the handgun aided or assisted him" in previous drug transactions. 130 F.3d 1420, 1427 (10th Cir. 1997). And in *United States v. Holland*, the court upheld joinder of counts where gun and drugs were found more than three months apart. 10 F.3d 696, 697-99 (10th Cir. 1993). Here, no inference is necessary: Defendant sought to kill his co-conspirators when they became witnesses against him.

Defendant argues that "[t]he election interference counts should not have been joined with the witness intimidation counts," Peña's Motion, p. 12, but his analysis cites only two cases, which he acknowledges <u>contradict</u> his position. *See* Defendant's Motion, p. 12 (citing *United States v. Davis*, 752 F.2d 963, 972 (5th Cir. 1985) and *United States v. Balzano*, 916 F.2d 1273, 1280 (7th

6

Cir. 1990)). In *Davis*, the Fifth Circuit found that the defendant's argument that joined counts grew out of separate circumstances was "litle (sic) more than a conclusory statement," and that because "obstruction charges grew out of Davis' attempt to avoid implication in or the detection of a fraudulent scheme," they "[bore] a logical relationship to underlying fraud crimes." *Davis*, 752 F.2d at 972. In *Balzano*, the Seventh Circuit stated that because "a conspiracy and its cover-up are parts of a common plan, there would be no possible problem of misjoinder if the government's argument had any factual basis." *Balzano*, 916 F.2d at 1280. The court found no misjoinder because the defendant's intimidation of a witness "was an attempt to prevent testimony concerning [his] criminal activities." *Id.*

Moreover, even if the solicitation counts were part of a separate case or were severed, Defendant's attempts to silence witnesses against him would still be admissible against him in a trial on Counts 1-10 under Fed. R. Evid. 404(b) as evidence of consciousness of guilt. *See United States v. Nichols*, 374 F.3d 959, 967 (10th Cir. 2004) ("a defendant's threat against a potential witness is generally admissible under Rule 404(b)" because "such threats show the defendant's intent to prevent the witness from testifying, and are thus an implicit acknowledgment of the defendant's guilt."), *vacated on other grounds*, 543 U.S. 1113 (2005); *United States v. Gatto*, 995 F.2d 449, 455 (3d Cir. 1993) (finding that evidence of threatening looks to a witness on trial was admissible as tending to show the defendant's consciousness of guilt.); *see also United States v. Hollis*, 971 F.2d 1441, 1457 (10th Cir. 1992) (upholding district court's refusal to sever because "had separate trials been granted, the evidence of similar conduct would likely have been admissible anyway under Fed. R. Evid. 404(b)").

Finally, as discussed in more detail below, because Defendant also made admissions to Individual 1 and Individual 2 about the conduct underlying Counts 1-10, they will still be called

7

as witnesses in both trials, even if severance is granted, to testify about the statements the defendant made to them, including the solicitations that form the basis for Counts 11-13. Severance here would therefore directly contravene Rule 8(a)'s purpose of "liberal joinder" in promotion of judicial efficiency.

### B. The Court should deny Defendant's Motion to Sever because Fed. R. Crim. P. 14 does not require severance in this case.

Even if the requirements of Rule 8(a) are met, as they are here, Rule 14(a) allows a court to conduct separate trials if the joinder of separate offenses "appears to prejudice a defendant or the government." *United States v. Olsen*, 519 F.3d 1096, 1102 (10th Cir. 2008) (quoting Fed. R. Crim. P 14(a)). Whether an indictment meets Rule 8(a)'s technical requirements in the first instance is a separate inquiry from Rule 14's question of prejudice. *Lane*, 474 U.S. at 449 n.12 ("[T]he Rule 14 prejudice component involves a different inquiry from the Rule 8 technical requirements."). The Tenth Circuit "ha[s] been reluctant to find prejudice where 'the relationship of the charges [grows] out of the defendant's own conduct.'" *Olsen*, 519 F.3d at 1103 (citing *United States v. Valentine*, 706 F.2d 282, 290 (10th Cir.1983)). And "[i]n establishing real prejudice, the defendant must demonstrate that the alleged prejudice he suffered outweighed the expense and inconvenience of separate trials." *United States v. Martin*, 18 F.3d 1515, 1518 (10th Cir. 1994) (quotation omitted).

Even if prejudice is shown, "[Rule 14] leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993). "One such method of relief would be to offer a limiting instruction to the jury that it should individually consider the charges against each defendant." *Id.*; *Zafiro*, 506 U.S. at 539 ("When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but . . . less drastic measures, such as limiting instructions, often will suffice to cure any

risk of prejudice."). "[T]he decision to grant a severance generally lies within the sound discretion of the trial court and its decision will not ordinarily be reversed in the absence of a strong showing of prejudice." *United States v. Hill*, 786 F.3d 1254, 1272 (10th Cir. 2015) (internal quotations omitted).

Severance should be denied here for several reasons. First, as in *Olsen*, the relationship of Counts 1-10 and 11-13 "grow[ ] out of defendant's own conduct," which weighs heavily against the existence of prejudice. 519 F.3d at 1103; *see also United States v. Valentine*, 706 F.2d 282, 290 (10th Cir. 1983) ("We feel, however, that there was no essential unfairness when the relationship of the charges grew out of the defendant's own conduct.").

Second, as noted above, if severance is granted, it would result in significant inefficiencies that the Tenth Circuit has found weigh against severance. For example, Individual 1 and Individual 2 would have to testify to the same facts in two separate trials. The court in *Olsen* found that the district court "had compelling reasons to deny severance" where witnesses to severed counts could have been required to testify in two separate trials. *Id.*; *see also United States v. Janus Industries*, 48 F.3d 1548, 1557-58 (10th Cir. 1995) (concluding that a district court did not abuse its discretion in denying a motion to sever where the evidence on the disputed counts would have been otherwise relevant and material to the remaining counts). The testimonial overlap presented here was lacking in the two cases that Defendant cites in support of his contention that "courts have prohibited admission of evidence related to witness tampering through attempted killing at trial for the underlying charges." Defendant's Motion, p. 10 (citing *United States v. Weir*, 575 F.2d 668, 671 (8th Cir. 1978); *United States v. McManaman*, 606 F.2d 919, 926 (10th Cir 1979)). In fact, both *Weir* and *McManaman* were decided on Fed. R. Evid. 403 grounds; severance of witness tampering charges was not at issue in either case. *See id.* Moreover, the high-profile nature of this trial only

9

exacerbates the inefficiency created by a severance. *See id.* (noting jury selection "took two full days" as a reason "rooted in judicial efficiency" to deny severance). The Court has already summoned a 100-member venire to trial once. Severance would likely result in it having to do so two more times. And severance would present a special risk to the multiple cooperating witnesses in this case, who would have to testify and then return to jail, where their safety could be compromised by widespread knowledge that they had cooperated with the United States.

Third, even if the court severs the counts, the evidence of Peña's solicitation attempts against him is still admissible in the trial for Counts 1-10 as evidence of a guilty conscience under Rule 404(b). Severance under Fed. R. Crim. P. 14 has no bearing on admissibility under Fed. R. Evid. 404(b). "[A severance] is not the equivalent of a ruling granting a motion in limine to exclude specified evidence from the trial." *United States v. Abdelhaq*, 246 F.3d 990, 993 (7th Cir. 2001) (Posner, J.), *cert. denied*, 534 U.S. 907. "Evidence underlying a severed count but relevant to the remaining counts has the same status as any other relevant evidence." *Id.* (emphasis added). Courts, including the Supreme Court, have repeatedly indicated that severance does not preclude the admission of evidence under Rule 404(b). *See, e.g. United States v. Lane*, 474 U.S. 438, 450 (1986) (finding misjoinder harmless because evidence of the charge that should have been severed would likely have been admissible under Rule 404(b) at a separate trial); *United States v. Hollis*, 971 F.2d 1441, 1457 (10th Cir. 1992) (upholding severance because "had separate trials been granted, the evidence of similar conduct would likely have been admissible anyway under Fed. R. Evid. 404(b), as showing intent or lack of mistake, etc."); *United States v. Taylor*, 54 F.3d 967, 974 n.5 (1st Cir. 1995) ("We also note that, even if the robberies had been charged in separate indictments, the UST robbery would in all probability have been admissible to prove preparation, plan, or knowledge regarding the BayBank heist. *See* Fed. R. Evid. 404(b)."); *United States v.*

10

*Pierce*, 62 F.3d 818, 830 (6th Cir. 1995) ("Severance would not have precluded the government from introducing motive evidence under Rule 404(b)."). Along the same lines, virtually every Circuit has approved the admissibility of Rule 404(b) evidence that formed the basis of charges that were severed.[1] If the Court agrees that the evidence forming the basis for severed solicitation counts would be admissible against Defendant to prove Counts 1-10, then severance accomplishes nothing other than adding the time and expense of a second trial.

Defendant contends that "[t]he only probative value that this testimony [about the solicitations] has as related to the election interference charges is to show consciousness of guilt under Rule 404(b)." Defendant's Motion, p. 11. But "Rule 404(b) is a rule of inclusion," *United States v. Jernigan*, 341 F.3d 1273, 1280 (10th Cir. 2003), such evidence is significant in a criminal trial, and courts have repeatedly approved the admissibility of obstructive behavior in order to demonstrate consciousness of guilt. *See, e.g., Nichols*, 374 F.3d at 967; *United States v. Smith*, 629 F.2d 650, 651 (10th Cir. 1980) ("Evidence of threats to a prosecution witness is admissible as showing consciousness of guilt if a direct connection is established between the defendant and the threat, as it was here." (collecting cases)). Even if, as Defendant asserts, the testimony's "only probative value" is to demonstrate a guilty conscience, that is more than sufficient. And because of the identical nature of the solicitations of Individual 1 and Individual 2 – a $10,000 offer to a

---

[1] *See, e.g., United States v. Sharbutt*, 120 F. Appx. 244, 245 and 249-51 (10th Cir. 2005) (unpublished); *United States v. Powell*, 50 f.3d 94, 98-101 (1st Cir. 1995); *United States v. Zackson*, 12 F.3d 1178, 1179-82 (2d Cir. 1993); *United States v. Bergrin*, 682 F.3d 261, 268, 271-72, and 280 (3d Cir. 2012); *United States v. Brunson*, 516 F. App'x. 154, 157-58 (3d Cir. 2013) (unpublished); *United States v. Posner*, 865 F.2d 654, 657-58 (5th Cir. 1989); *United States v. Utrera*, 259 F. App'x. 724, 730 (6th Cir. 2008) (unpublished) and 05-cr-111, Dkt No. 1 (indictment) and 47 (severance order) (WDKY); *United States v. Contreras*, 816 F.3d 502, 506 and 512 (8th Cir. 2016); *United States v. Plancarte-Alvarez*, 366 F.3d 1058, 1061-62 (9th Cir. 2004); *United States v. Lamb*. 214 F. App'x. 908, 911 and 915-17 (11th Cir. 2007) (unpublished).

fellow inmate to kill co-conspirator witnesses – their testimony will corroborate one another, adding to their credibility as witnesses to Counts 1-10 and providing additional probative value.

Again, Defendant cites contrary authority without distinguishing that authority from the facts before the Court in this case. In *United States v. Begay*, the Ninth Circuit held that evidence that the defendant sought to intimidate the witnesses against him was admissible to show consciousness of guilt, and its "probative value outweighed any danger of unfair prejudice." 673 673 F.3d 1038, 1046 (9th Cir. 2011) (en banc). Likewise, in *United States v. Monahan*, the First Circuit held that evidence of threats to witnesses was properly admitted to show that the defendant was conscious of his guilt and that the defendant "was willing to take extreme measures to exclude pertinent evidence from the trial." 633 F.2d 984, 985 (1st Cir. 1980) (per curiam). Specifically, the First Circuit found that "any 'prejudice' that arose did so only because of the evidence's probative character." *Id*. The circumstances are identical here.

Defendant also contends that "[o]nce a jury hears evidence of an alleged murder-for-hire plot, then a jury becomes increasingly likely to convict a defendant because they are a bad person rather than based on the evidence." But "[n]either a mere allegation that defendant would have a better chance of acquittal in a separate trial, nor a complaint of the spillover effect . . . is sufficient to warrant severance." *United States v. Barrett*, 496 F.3d 1079, 1097 (10th Cir. 2007). Any defendant seeking severance can make a contention of a higher likelihood of conviction, but such conclusory assertions do not suffice. And they certainly do not satisfy Defendant's burden of demonstrating a risk of prejudice that "outweigh[s] the expense and inconvenience of separate trials." *Martin*, 18 F.3d at 1518.

Finally, even if Defendant could make a showing of prejudice – and he cannot – the Court can avoid the inefficiency of two trials by "offer[ing] a limiting instruction to the jury that it should

12

individually consider the charges against each defendant." *See United States v. Caldwell*, 560 F.3d 1202, 1213 (10th Cir. 2009) (holding instruction advising jury that "the guilt or innocence of a defendant as to each count or offense must . . . be considered separately" was effective). Despite Defendant's assertion that limiting instructions do not work, the Tenth Circuit has repeatedly found otherwise and held them sufficient to cure issues of potential prejudice. *United States v. Hutchinson*, 573 F.3d 1011, 1026 (10th Cir. 2009) ("[L]imiting instructions are ordinarily sufficient to cure potential prejudice.") (quotation omitted)). "To the extent [Peña] argues that the jury would not follow these instructions, a central assumption of Tenth Circuit jurisprudence is that juries follow the instructions they receive." *Akina*, 2024 U.S. Dist. LEXIS 16472, at *7 (alterations omitted) (quoting *United States v. Castillo*, 140 F.3d 874, 884 (10th Cir. 1998)); *see also United States v. Cardwell*, 433 F.3d 378, 388 (4th Cir. 2005) (upholding denial of motion to sever felon of possession of firearm count from murder-for-hire counts, noting that although prior felony would not have been admissible, trial court instructed jury that "[e]ach charge, and the evidence pertaining to it, should be considered separately").

## III. CONCLUSION

For all the above reasons, the United States requests that the Court deny Peña's motion.

Respectfully submitted,

| | |
|---|---|
| ALEXANDER M.M. UBALLEZ<br>United States Attorney | COREY R. AMUNDSON<br>Chief, Public Integrity Section<br>Criminal Division, U.S. Department of Justice |
| /s/ *Jeremy Peña*<br>JEREMY PEÑA<br>PATRICK E. CORDOVA<br>Assistant United States Attorneys<br>Post Office Box 607<br>Albuquerque, New Mexico 87102<br>(505) 346-7274 | /s/ *Ryan R. Crosswell*<br>RYAN R. CROSSWELL<br>Trial Attorney<br>1301 New York Ave. NW<br>Washington, D.C. 20005<br>(202) 616-5699 |

## CERTIFICATE OF SERVICE

       I hereby certify that on November 17, 2024, I filed the foregoing document electronically through the CM/ECF system. Pursuant to the CM/ECF Administrative Procedures Manual, §§ 1(a), 7(b)(2), such filing is the equivalent of service on parties of record.

*/s/ Ryan R. Crosswell*
RYAN R. CROSSWELL
Trial Attorney